**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-2790-RMR-SBP

MESHEL T. SIRIO,

  Plaintiff,

v.

MOSES "ANDRE" STANCIL, in his official capacity as the Executive Director of the
Colorado Department of Corrections,
RYAN LONG, in his personal capacity,
RYAN FLORES, in his personal capacity,
CATHY ALEXANDER, in her personal capacity, and
GARY LITTLE, in his personal capacity,

  Defendants.

---

**FIRST AMENDED COMPLAINT**

---

  Pursuant to Fed.R.Civ.P. 15(a)(2), Plaintiff Meshel T. Sirio ("Sirio") submits

the following First Amended Complaint.

1

## I. INTRODUCTION

1.     This is James Keith Sack:



2.     On November 1, 2009, police were called to Mr. Sack's home. When they arrived, they found him naked and lying on top of a naked woman, who was later identified as Yesenia Avila. Mr. Sack's hand was in a pool of blood, and he was still holding the ten-inch filet knife he had used to kill Ms. Avila. Mr. Sack pled guilty to second degree murder and was sentenced to 36 years in prison.

3.     This is the Colorado Department of Corrections ("CDOC") inmate information page for Mr. Sack, who now calls himself Je T'Amour A. Sack.



SACK, JE T'AMOUR A

| | | |
|---|---|---|
| Name: | SACK, JE T'AMOUR A | DOC Number: 152013 |
| Age: | 53 | Est. Parole Eligibility Date: 03/26/2032 |
| Ethnicity: | WHITE | Next Parole Hearing Date: Dec 2031 |
| Gender: | FEMALE | |
| Hair Color: | BROWN | This offender is scheduled on the Parole Board agenda for the month and year above. Please contact the facility case manager for the exact date. |
| Eye Color: | BLUE | |
| Height: | 5' 08" | |
| Weight: | 159 | Est. Mandatory Release Date: 02/26/2041 |
| | | Est. Sentence Discharge Date: |
| | | Current Facility Assignment: DENVER WOMENS CORRECTIONAL FACILITY |

2

4.      Mr. Sack—a man convicted of the brutal murder of a woman—now claims to be a woman, and CDOC has placed him in the Denver Women's Correctional Facility ("DWCF"), where real women, including Sirio, have been forced to share their cell and other living spaces with him. For reasons that should be obvious, this is egregiously unconstitutional and must stop.

## II.  PARTIES

5.      Sirio is an individual currently incarcerated at the DWCF located at 3600 Havana Street, Denver, Colorado 80239. The DWCF is managed by CDOC.

6.      Defendant Moses "Andre" Stancil ("Stancil") is sued in his official capacity as the Executive Director of CDOC. Pursuant to C.R.S. §§ 17-1-101 and 17-1-103, and at all relevant times, Stancil was responsible for the overall management, supervision, and control of all of CDOC's facilities.

7.      Defendant Ryan Long ("Long") was the warden of DWCF in 2024 and part of 2025. He is sued in his individual capacity. For the reasons set forth below, Long is not entitled to qualified immunity.

8.      Defendant Ryan Flores ("Flores") succeeded Long as the warden at DWCF. He is the current warden at DWCF. He is sued in his personal capacity. For the reasons set forth below, Flores is not entitled to qualified immunity.

9.      Defendant Cathy Alexander holds the rank of captain at DWCF. She is sued in her personal capacity. For the reasons set forth below, Alexander is not entitled to qualified immunity.

10. Defendant Gary Little ("Little") is the Custody and Control Manager of DWCF. For the reasons set forth below, Little is not entitled to qualified immunity.

11. At all times relevant to this Complaint, Defendants have been or will be acting under color of state law within the meaning of 42 U.S.C. § 1983.

### III.  JURISDICTION AND VENUE

12. This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States.

13. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

### IV. GENERAL ALLEGATIONS

**A.    Terminology**

14. "Female" means a person belonging to the sex that produces the large reproductive cell (i.e., ova or eggs). A "woman" is an adult human female.

15. "Male" means a person belonging to the sex that produces the small reproductive cell (i.e., sperm). A "man" is an adult human male.

**B.    CDOC Has Implemented a Policy Pursuant to Which it Routinely Violates the Colorado Female Inmate Protection Statute**

16. C.R.S. § 17-26-106 shall be referred to herein as the Colorado Female Inmate Protection Statute or the "CFIPS." The CFIPS is a model of statutory clarity and precision. It states in its entirety: "Male and female prisoners, except husband and wife, shall not be put or kept in the same room." Thus, under Colorado law, it is

4

plainly illegal to keep male and female prisoners together in the same correctional facility.

17.    Unfortunately, CDOC has implemented a policy pursuant to which it routinely locks men in the same facility as women.

18.    This policy is entitled Practices Concerning Transgender, Gender Diverse, or Intersex Offenders and is set forth at section 700-14 of CDOC's Administrative Regulations (the "Transgender AR").

19.    CDOC implemented the current version of the Transgender AR in response to a consent decree entered in *Raven v. Polis*, Case No. 2019CV34492, District Court for the City and County of Denver.

20.    The plaintiffs in *Raven v. Polis* sought relief that included the following:

> That the Court enter declaratory relief against Defendants and order Defendants to adopt and implement policies, procedures and other steps necessary to ensure that people with Gender Dysphoria receive necessary accommodations, including medical and mental evaluations and health care by qualified providers who met the competency requirements stated in the *WPATH Standards of Care*, and receive all care deemed medically necessary.

*Raven v. Polis*, First Amended Class Action Complaint, 26 (emphasis added).

21.    The World Professional Association for Transgender Health ("WPATH") referred to in the *Raven* plaintiffs' complaint has promulgated certain standards for treating patients with gender dysphoria.

22.    The *Raven* plaintiffs obtained the relief they requested. In a 34-page consent decree, the Denver District Court specified in extensive detail policies related to "transgender" prisoners that CDOC was required to implement. On

information and belief, the policies that the Denver District Court required the CDOC to implement are based on the "WPATH Standards of Care" to which the *Raven* Plaintiffs referred in their complaint.

23. It has recently come to light that WPATH is an extremist political advocacy group posing as a healthcare organization. "Recent revelations suggest that WPATH, long considered a standard bearer in treating pediatric gender dysphoria . . . bases its guidance on insufficient evidence and allows politics to influence its medical conclusions." *United States v. Skrmetti*, 145 S. Ct. 1816, 1847 (2025) (Thomas, J., concurring). "Other 'recent revelations' might reinforce the conclusion that 'WPATH's lodestar is ideology, not science.'" *Id*. "WPATH's apparent willingness to let political interests influence its medical conclusions highlights this reality. States are never required to substitute expert opinion for their legislative judgment, and, when the experts appear to have compromised their credibility, it makes good sense to chart a different course." *Id*. at 1849.

24. The state district court's consent decree issued in *Raven* is not binding on this Court as to federal law. The State of Colorado has no power to deny Sirio's rights under federal law, even if it does so under the guise of complying with a consent decree entered by a state court judge.

25. As of July 2025, there were 689 inmates at DWCF. On information and belief, 18 of those inmates were men. Thus, 2.6% of the inmates at DWCF are men, including men who have been convicted of brutally violent crimes against women.

26.    The men incarcerated at DWCF are routinely kept in cells and other intimate spaces with women prisoners.

27.    The men incarcerated at DWCF are routinely kept with women prisoners in the same common areas and dayrooms where prisoners socialize, engage in activities, and spend time outside their cells during designated periods.

28.    Defendants are aware of the CFIPS.

29.    The obvious rationale for the CFIPS is to further privacy and safety of women inmates and protect them against possible violence and sexual assault.

30.    Defendants are aware of that self-evident rationale for the CFIPS. "[F]emale and male inmates are not housed together in prisons because this risk is not only *self-evident*, but serious and real." *De Veloz v. Miami-Dade Cnty.*, 756 F. App'x 869, 877 (11th Cir. 2018) (emphasis added).

31.    A prison official's knowledge of a statute that was enacted specifically to protect female inmates, combined with his knowledge that he violated that statute, supports an inference that he was aware of (and indifferent to) an increased risk of harm when he violated the statute. Accord *Hostetler v. Green*, 323 F. App'x 653, 658 (10th Cir. 2009) (Gorsuch, J.).

C.    **Placing Men in a Women's Prison Violates the Rights of Women Inmates**

32.    In blatant violation of the CFIPS, the Eighth Amendment, and basic human decency, Defendants forced Sirio to share a cell and other intimate spaces with men. Defendants continue to keep Sirio in other rooms at DWCF with men. Defendants are well aware that allowing men into a women's prison creates a

7

substantially increased risk of harm to women prisoners and violates their rights, including their right to:

(a) be safe from a self-evident increase in the risk of harm;

(b) privacy and dignity, which includes the right not to be compelled to sleep in (and otherwise share) the same cell as men, shower with men, use toilets in the presence of men, or otherwise be partially or fully naked in the presence of men; and

(c) privacy and dignity, which includes the right not to be exposed to the partially or fully naked bodies of men.

33.    Justice Ginsburg recognized the imperative of bodily privacy in *United States v. Virginia*, 518 U.S. 515(1996), where the Court held that the Virginia Military Institute was required to admit women. In her opinion, Justice Ginsburg noted that the Court's ruling would "undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements." *Id.*, at 551 n. 19. Justice Ginsburg was always sensitive to the constitutional dimensions of bodily privacy. In an article, she wrote that "[s]eparate places to disrobe, sleep, perform personal bodily functions are permitted, in some situations required, by regard for individual privacy. *Individual privacy, a right of constitutional dimension* is appropriately harmonized with the equality principle." Ruth Bader Ginsburg, "The Fear of the Equal Rights Amendment," *Wash. Post*, Apr. 7, 1975, at A21 (available at https://perma.cc/K667-9TTQ).

**D.     The Conditions Plaintiff Must Endure Are Cruel and Unusual**

34.     As the person in overall charge of DWCF in 2024 and part of 2025,
Defendant Long was aware of, and personally acted to further, and was deliberately
indifferent to the wrongs complained of herein.

35.     As the person currently in overall charge of DWCF , Defendant Flores
is aware of, and personally acted to further, and is deliberately indifferent to the
wrongs complained of herein.

36.     Captain Alexander made the decision to place Sirio in a cell with men
on two different occasions. On information and belief, she made this decision with
the specific intent of harming Sirio and/or as a punitive/retaliatory measure.
Captain Alexander was deliberately indifferent to the obvious harms she caused to
Plaintiff.

37.     Sirio complained to Defendant Little of the wrongs described herein.
Little had the power and authority to remedy those wrongs. In deliberate
indifference to Sirio's plight, Little declined to provide her with the relief she
requested.

38.     Sirio was placed in a cell with Mr. Sack in April 2024.

39.     Devin Downey is a man. Mr. Downey pled guilty to second degree
murder in 2013 after he shot a man to death in a Pueblo, Colorado park.

40.     Sirio was placed in a cell with Mr. Downey in January 2025.

41.     Long and Flores were aware of and acquiesced in the decision to
incarcerate Mr. Sack, Mr. Downey and other men at DWCF.

9

42.    While Sirio was in the same cell as men, she suffered humiliation, loss of privacy, anxiety, and fear for her physical and emotional safety. She feared being subjected to violence, sexual assault, and harassment.

43.    Sirio is not currently being forced to share a cell with a man, but she fears that this could happen again at any time. Due to her small stature (Sirio stands four feet and eleven inches tall), she fears for her personal safety from the much larger men at DWCF.

44.    While a man is not currently in her cell, Sirio must nevertheless share other spaces (including intimate spaces) in DWCF with men.

45.    A typical "dry cell" is approximately 105 square feet. This is smaller than the typical hotel room. A dry cell is so-called because it has no toilet or sink.

46.    Sirio is in a dry cell.

47.    The inmates in dry cells must share a common restroom that is used by all the inmates in their wing of the facility. The restroom contains two toilets and two showers.  The toilets are separated only by a partition and door, neither of which extends to the floor. The shower stalls do not have doors. They have only shower curtains.

48.    Sirio must use these toilets and showers at the same time as the men who are incarcerated with her.

49.    While she uses the toilet and shower, Sirio must endure listening to the slapping sounds and groans men make while they masturbate.

50.     The men walk in front of Sirio in their underwear or robes, and she can clearly see the outline of their erect penises.

51.     When she goes to the toilet, Sirio must listen to men urinate and defecate in the only partially enclosed adjacent toilet stall.

52.     When men are sleeping in her cell, Sirio requests that they not disrobe, but she knows they might do so at any moment.

53.     DWCF also has what is known as "wet cells." Wet cells have an unscreened toilet and sink unit on the wall inside the cell.

54.     Sirio dreads being placed in a wet cell with a man because women in these cells must endure using the toilet in full view of the man. They must also endure the men using the toilet in front of them.

55.     In the wings of DWCF with wet cells, women inmates must use a common shower room with men.  The showers in these rooms are separated by a translucent divider that allows the men to clearly see the silhouette and the showering activities of the women.

56.     Sirio is also aware of and affected by violence by men against women in DWCF.  For example, in mid-August 2025, one of the male inmates committed what he called "domestic violence" incident against a woman in the outside yard.

57.     On information and belief, men have impregnated women at DWCF. On information and belief, DWCF staff has helped at least two of these women to obtain induced abortions.

11

58.     On information and belief, one of the women inmates who became pregnant while at DWCF remains pregnant at this time.

59.     Sirio must share all of the common spaces at DWCF, such as dayrooms, with men. The only place she can escape being in the presence of men is in her cell and then only during those times a man has not been assigned to share her cell. When a man is assigned to Sirio's cell, there is literally no place in all of DWCF that Sirio can isolate herself from men, some of whom, have a history of brutal violence against women.

60.     Locking men and women together at DWCF is abusive to the women inmates. Not only is this a blatant violation of the CFIPS, but it also creates an unreasonable risk of harm to which Defendants have been deliberately indifferent. "[F]emale and male inmates are not housed together in prisons because this risk is not only self-evident, but serious and real." *De Veloz v. Miami-Dade Cnty.*, 756 F. App'x 869, 877 (11th Cir. 2018).

61.     Prior to being incarcerated, Sirio was a victim of violence perpetrated by men. As a survivor of such violence, being locked up together with several men traumatizes her. She lives in constant anxiety and fear for her physical and emotional safety. She fears violence, sexual assault, and harassment. She lives in constant dread that she will be required to share a cell with a man again.

62.     Sirio has communicated with other prisoners at DWCF who also live in fear of violence, sexual assault, and harassment by the male prisoners and who are now struggling with mental health issues as a result of being locked up with men.

63.    Sirio lives in constant fear of retaliation or punitive measures by

DWCF staff because she has complained about being housed with men.

64.    On April 17, 2024, Sirio filed a "Step 1" grievance pursuant to CDOC's

grievance procedures.

65.    Sirio did not receive a response to her Step 1 grievance. Therefore, on

May 13, 2024, she filed a Step 2 grievance in which she stated:

> On April 5, 2024 [*sic*], you compelled me to share a living space with a
> transgender offender #152013 Sack, Je T'Amour A. who was assigned male at
> birth. This contravenes fundamental principles of privacy and security
> applicable to a women's correctional facility. I submitted a step-1 grievance
> concerning this issue but I did not receive a response from you. As a result, I
> am now escalating this matter to a step-2 grievance.
>
> I request the enforcement of an administrative regulation clause that
> prohibits the co-housing of transgender individuals who were assigned male
> at birth with biological females in a women's prison. This should not occur for
> reasons of convenience or as a punitive measure. Additionally, I request a
> formal apology for this action and the resulting distress and anxiety. A
> suitable remedy for incidental emotional trauma and triggering my PTSD is
> also being sought. Please respond at the provided space. (5-12-2024 was 25
> calendar days.) (C.R.S. § 17-26-106.)

66.    On May 29, 2024, Little responded to Sirio's step 2 grievance. Little

concluded that "staff performed within the scope of their authority and were within

the parameters of the Administrative Regulations." Little and Long took no action

to redress the deprivation of Sirio's rights or otherwise address her grievance.

67.    Sirio filed a Step 3 grievance on June 8, 2024. On August 12, 2024,

that grievance was summarily rejected as well. Sirio has exhausted her

administrative remedies as required by 42 U.S.C. § 1997e(a).

13

68.     An "incentive unit" is the unit at DWCF that provides increased privileges such as additional recreational time, education programs, and vocational training and potentially better housing arrangements compared to the general population.

69.     Sirio fears that Defendants will retaliate against her for filing this Complaint by removing her from the incentive unit to which she is currently assigned or transferring her to La Vista Correctional Facility. She reserves the right to supplement this Complaint if Defendants retaliate against her.

## V. FIRST CLAIM FOR RELIEF
### Deliberate Indifference
### U.S. Const., amends. VIII and XIV
### 42 U.S.C. § 1983
### (Claim for Injunctive Relief Against all Defendants)

70.     The preceding paragraphs are realleged and incorporated by reference.

71.     The Eighth Amendment to the United States Constitution (as made applicable to the States by and through the Fourteenth Amendment) prohibits cruel and unusual punishment.

72.     For reasons that are self-evident to any reasonable person, forcing Sirio to share a cell with a man caused her to suffer extreme emotional distress, shame, intimidation, humiliation, indignation, embarrassment, and fear. In addition, this created a serious risk of physical harm. *Hostetler, supra*, *De Veloz, supra*. This is especially true regarding forcing women to be housed with men like Mr. Sack who have a history of brutal lethal violence against women.

14

73.    There is no legitimate penological interest in allowing male inmates to observe women inmates at any time they choose, including during slumber or using the toilet and other intimate spaces. See *Johnson v. Surles,* 2019 WL 13336813, at *5 (N.D. Ala. Sept. 12, 2019), report and recommendation adopted, 2020 WL 13750675 (N.D. Ala. Jan. 2, 2020). Therefore, Defendants have violated Plaintiff's constitutional rights by violating her right to privacy and subjecting her to unconstitutional conditions of confinement. *Id*.

74.    Defendants knew about these harms and risks. Indeed, they intentionally created them. Plaintiff's complaints and grievances were summarily rejected. Thus, Defendants acted with deliberate indifference to those harms and risks.

75.    Plaintiff is not currently being forced to share a cell with a man. However, under the Transgender AR, CDOC could place a man in her cell at any time. This is not a speculative or remote possibility because as of July 2025, there were 18 men incarcerated in DWCF. Thus, Plaintiff is continually susceptible to having a man placed in her cell and being required to share common rooms and intimate spaces with men.

### VI. SECOND CLAIM FOR RELIEF
### Deliberate Indifference
### U.S. Const., amends. VIII and XIV
### 42 U.S.C. § 1983
### (Claim for Money Damages Against Defendants Long, Flores, Alexander, Little)

76.    The preceding paragraphs are realleged and incorporated by reference.

77.     Since at least 2004, it has been clearly established that an inmate has an Eighth Amendment right to be protected against prison officials taking actions that are deliberately indifferent to a substantial risk of sexual assault by fellow prisoners. *Hostetler v. Green*, 323 F. App'x 653, 659 (10th Cir. 2009), citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); and *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980) ("[A]n inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates.").

78.     The Tenth Circuit has expressly rejected prison officials' defense that clearly established law did not provide them notice that they could not take actions deliberately indifferent to a substantial risk of prisoner-on-prisoner sexual assault. *Id*. The court observed that "[t]he Supreme Court and the Tenth Circuit have repeatedly and unequivocally established an inmate's Eighth Amendment right to be protected from substantial risks of sexual assault by fellow prisoners." *Id*., quoting *Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir.2008). Thus, in a similar case, the court could not "help but reject [the defendant's] challenge to the district court's holding that the law was clearly established at the time of his actions such that he was on notice that his actions ran afoul of the Constitution." *Id*. That case involved a man being placed in a woman's cell for *ten minutes*. It follows that a woman inmate has a greater constitutional right not to be forced to live in the same cell as a man around the clock.

16

## VII. THIRD CLAIM FOR RELIEF
### Right to Privacy
### U.S. Const., amends. XIV
### 42 U.S.C. § 1983
### (Claim for Injunctive Relief Against all Defendants)

79.    The preceding paragraphs are realleged and incorporated by reference.

80.    There is a constitutional right to privacy. *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982). Prisoners do not have the full protection of the Constitution, but they do not forfeit all constitutional protection. *Id*. The state may restrict these rights only to the extent necessary to further the correction system's legitimate goals and policies. *Id*. Courts have held that if guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities, or showering, the inmates' constitutional rights to privacy are being violated. *Id*. In summary, male guards are not permitted to watch female inmates engaging in these activities. There is no reason that the same rule should not apply to male inmates. See also, *Colbruno v. Kessler*, 928 F.3d 1155, 1164 (10th Cir. 2019) (exposure of body violates privacy right in violation of Fourteenth Amendment unless related to legitimate penological interest); *Cox v. Denning*, 652 F. App'x 687, 691 (10th Cir. 2016) (frequent exposure to opposite sex may constitute violation of constitutional right to privacy); *Hayes v. Marriott*, 70 F.3d 1144, 1147 (10th Cir. 1995) (frequency of inmate's expose to the opposite sex  of undressing, using toilet facilities, and showering is an important factor in assessing the constitutionality of prison practices); and *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1986) (finding as to prisoner's privacy rights that "[s]hielding one's

17

unclothed figure from the view of strangers, particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity").

81. There is no legitimate penological interest in allowing male inmates to observe women inmates at any time they choose, including during slumber or using the toilet and other intimate spaces. See *Johnson v. Surles,* 2019 WL 13336813, at *5 (N.D. Ala. Sept. 12, 2019), report and recommendation adopted, 2020 WL 13750675 (N.D. Ala. Jan. 2, 2020). Therefore, Defendants have violated Plaintiff's constitutional rights by violating her right to privacy and subjecting her to unconstitutional conditions of confinement. *Id*.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable as of right.

## PRAYER FOR RELIEF

Plaintiff prays that the Court:

82. Enter injunctive relief enjoining all Defendants and their officers, agents, and employees from incarcerating male inmates in CDOC's women's correctional facilities, including, the DWCF..

83. Award money damages against Defendants Long, Flores, Alexander, and Little;

84. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

85. Grant any such other and further relief as the Court may deem proper.

18

*/s/ Barry K. Arrington*
_____

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
(303) 205-7870
barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*
_____

Barry K. Arrington